FILED

2012 JAN -3 PM 1: 50

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

BY:_____

1  BRIGGS LAW CORPORATION [FILE: 1190.16]
   Cory J. Briggs (State Bar no. 176284)
2  Mekaela M. Gladden (State Bar no. 253673)
   99 East "C" Street, Suite 111
3  Upland, CA 91786
   Telephone: 909-949-7115
4  Facsimile: 909-949-7121

5  Attorneys for Plaintiffs La Cuna de Aztlan Sacred Sites
      Protection Circle Advisory Committee, CAlifornians for
6      Renewable Energy, Alfredo Acosta Figueroa, Phillip Smith,
       Patricia Figueroa, Ronald Van Fleet, Catherine Ohrin-Greipp.
7      Rudy Martinez Macias, and Gilbert Leivas

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10 ────────────────────────────────  CASE NO. CV 12 - 00005 VAP SPx
   LA CUNA DE AZTLAN SACRED S )
11 PROTECTION CIRCLE ADVISORY )
   COMMITTEE; CALIFORNIANS FOR )   COMPLAINT FOR DECLARATORY,
12 RENEWABLE ENERGY; ALFREDO )      INJUNCTIVE, AND MANDAMUS
   ACOSTA FIGUEROA; PHILLIP SMITH; ) RELIEF UNDER THE
13 PATRICIA FIGUEROA; RONALD VAN )   ADMINISTRATIVE PROCEDURES
   FLEET; CATHERINE OHRIN-GREIPP, )  ACT, THE NATIONAL HISTORIC
14 RUDY MARTINEZ MACIAS, and GILBERT ) PRESERVATION ACT, THE
   LEIVAS, )                         NATIONAL ENVIRONMENTAL
15                                )  POLICY ACT, THE FEDERAL LAND
            Plaintiffs,           )  POLICY AND MANAGEMENT ACT,
16                                )  AND THE RELIGIOUS FREEDOM
        vs.                       )  RESTORATION ACT
17                                )
   W E S T E R N   A R E A   P O W E R )
18 ADMINISTRATION; TIMOTHY J. MEEKS, )
   in his official capacity as Administrator of the )
19 Western Area Power Administration; UNITED )
   STATES DEPARTMENT OF THE )
20 INTERIOR; KEN SALAZAR, in the official )
   capacity of Secretary of the United States )
21 Department of the Interior; UNITED STATES )
   BUREAU OF LAND MANAGEMENT; )
22 ROBERT ABBEY, in the official capacity of )
   Director of the United States Bureau of Land )
23 Management; TERI RAML, in the official )
   capacity of District Manager of the California )
24 Desert District of the United States Bureau of )
   Land Management; JOHN KALISH, in the )
25 official capacity of Field Manager of the Palm )
   Springs Field Office of the United States Bureau )
26 of Land Management; SOLARRESERVE, LLC; )
   and RICE SOLAR ENERGY, LLC, )
27                                )
            Defendants.           )
28 ────────────────────────────────

1    Plaintiffs LA CUNA DE AZTLAN SACRED SITES PROTECTION CIRCLE
2    ADVISORY COMMITTEE, CALIFORNIANS FOR RENEWABLE ENERGY, ALFREDO
3    ACOSTA FIGUEROA, PHILLIP SMITH, PATRICIA FIGUEROA, RONALD VAN FLEET,
4    CATHERINE OHRIN-GREIPP, RUDY MARTINEZ MACIAS, and GILBERT LEIVAS allege
5    as follows:

6                                        **Parties**

7        1.    Plaintiff La Cuna de Aztlan Sacred Sites Protection Circle Advisory Committee
8    ("LA CUNA") is a non-profit, 501(c)(3) organization whose members are indigenous and
9    culturally aware individuals who are dedicated to physically protecting geoglyphs and other
10   sacred sites in Southern California, Nevada, and Arizona.  LA CUNA advocates for the
11   preservation of and respect for Native American culture, including physical sites and the
12   protection of culturally and religiously significant plant and animal species.  LA CUNA is a
13   party to that certain *Amendment No. 1 to Memorandum of Understanding Between United States*
14   *Department of the Interior Bureau of Land Management and the Southern Low Desert Resource*
15   *Conservation and Development Council.*  Plaintiff Alfredo Acosta Figueroa and other members
16   of LA CUNA reside, participate in religious activities, and/or recreate in the area affected by
17   the actions challenged in this proceeding; and they attach religious and cultural significance to
18   the federal (public) land that will be affected by those actions.

19       2.    Plaintiff CAlifornians for Renewable Energy ("CARE") is a non-profit
20   organization formed to promote public education concerning the responsible development of
21   renewable energy and in the preservation of and respect for Native American culture.  Since its
22   inception, CARE has promoted environmental and social justice, particularly with respect to
23   Native Americans, and advocated for responsible development of renewable energy and the
24   preservation of and respect for Native American culture. Plaintiff Alfredo Acosta Figueroa and
25   other members of CARE reside, participate in religious activities, and/or recreate in the area
26   affected by the actions challenged in this proceeding; and they attach religious and cultural
27   significance to the federal (public) land that will be affected by those actions.  CARE's
28   members are also California ratepayers and federal taxpayers.

COMPLAINT ETC.                                                              Page 2

3.      Plaintiffs Alfredo Acosta Figueroa, Phillip Smith, Patricia Figueroa, Ronald Van Fleet. Catherine Ohrin-Greipp, Rudy Martinez Macias, and Gilbert Leivas are individuals who reside, recreate, and/or participate in religious and cultural activities in the area affected by the actions challenged in this lawsuit. These individuals will suffer the environmental impacts of the Project, are either members of one or more Native American tribes or the descendants of such members, and have an interest in the responsible development of renewable energy and in the preservation of and respect for Native American culture.

4.      The Western Area Power Administration, United States Department of the Interior, and  the United States Bureau of Land Management are agencies or instrumentalities of the United States.

5.      The following Defendants are being sued in their official capacities: Timothy J. Meeks, in the official capacity of Administrator of the Western Area Power Administration; Ken Salazar, in the official capacity of Secretary of the United States Department of the Interior; Robert Abbey, in the official capacity of Director of the United States Bureau of Land Management; Teri Raml, in the official capacity of District Manager of the California Desert District of the United States Bureau of Land Management; John Kalish in the official capacity of Field Manager of the Palm Springs Field Office of the United States Bureau of Land Management;

6.      Defendants SolarReserve, LLC, and Rice Solar Energy, LLC, were the applicants for the actions challenged in this proceeding or have a similar interest in the challenged actions and are thus believed to be real parties in interest.

**Background Information**

7.      Generally speaking, this lawsuit challenges Defendants' actions in connection with the Rice Solar Energy Project and Amendment to the California Desert Conservation Area Plan ("Rice Project" or "Project"), in Riverside County approximately 40 miles northwest of Blythe, California.  The record of decision adopted by and the approvals given by Defendants for the Project are as follows:

A.      Defendants have (among other things) approved an amendment to the California Desert Conservation Area Plan ("CDCA Plan");

COMPLAINT ETC.                                                                                                    Page 3

1         B.     Defendants have (among other things) approved rights-of-way to Rice

2   Solar Energy, LLC, covering 150 acres of BLM-administered land and to Western Area Power

3   Administration for four acres of BLM-administered land; and

4         C.     Defendants have (among other things) approved Rice Solar Energy, LLC's

5   request for interconnection to Western Area Power Administration's transmission system.

6       8.     Plaintiffs challenge the Project on a variety of grounds.  By way of example and

7   not limitation:

8         A.     Defendants failed to properly engage in the consultations required for the

9   Project under the National Historic Preservation Act ("NHPA"), 16 U.S.C. § 470 *et seq.*

10       B.     Defendants failed to conduct an adequate analysis of the Project's

11   cumulative impacts, failed to prepare a programmatic environmental impact statement, failed

12   to adequately identify and evaluate the significance of the affected cultural environment, and

13   failed to conduct an adequate analysis of alternatives to the Projects under the National

14   Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*

15       C.     Defendants failed to prepare a programmatic environmental impact

16   statement for the broad major federal action contemplated by the Projects, in violation of NEPA.

17   In a presentation delivered at Defendants' National Land Use Planning Conference in 2009,

18   Defendants announced publicly that they were in the process of preparing a programmatic

19   statement covering the Projects (and other solar-electricity generation projects).  It turns out,

20   however, that Defendants failed to complete the programmatic statement *before* approving the

21   Project. (A true and correct copy of the presentation is attached to this pleading as Exhibit "B.")

22       D.     Defendants violated the Federal Land Policy and Management Act of 1976

23   ("FLPMA"), 43 U.S.C. § 1701 *et seq.*, by authorizing solar-electricity generation activities on

24   lands not designated therefor in the CDCA Plan and by allowing the permanent impairment of

25   the lands affected by the Project and allowing unnecessary or undue degradation on these lands.

26       E.     Defendants violated the Religious Freedom Restoration Act ("RFRA"), 42

27   U.S.C. § 2000bb *et seq.*, by authorizing solar-electricity generation and transmission activities

28   on lands in a manner that will impose a substantial burden on Plaintiffs' exercise of their

COMPLAINT ETC.                                        **Page 4**

1  religion but without a compelling governmental interest or the employment of the least
2  restrictive means.

3  **Jurisdiction, Venue, and Exhaustion of Remedies**

4       9.    This Court has jurisdiction over this proceeding pursuant to Sections 1331 and
5  1361 of Title 28 of the U.S. Code because this pleading alleges violations of federal law and
6  seeks to compel Defendants to perform duties owed to Plaintiffs, their members, and other
7  members of the public. The Court also has jurisdiction over this proceeding pursuant to Section
8  551 *et seq.* of Title 5 of the U.S. Code, commonly known as the Administrative Procedure Act
9  ("APA"), because the pleading seeks judicial review of actions taken by one or more agencies
10  or officers of the United States.

11       10.    Venue is proper in this Court under Section 1391(e) of Title 28 of the U.S. Code,
12  because (*i*) Defendants are either officers, employees, or agencies of the United States and/or
13  (*ii*) both a substantial part of the events or omissions giving rise to this proceeding were
14  committed in this judicial district and a substantial part of the property at issue in this
15  proceeding is located in this judicial district.

16       11.    Plaintiffs have satisfied each and every exhaustion-of-remedies requirement that
17  must be satisfied in order to maintain this proceeding. Alternatively, no exhaustion-of-remedies
18  requirement may be applied to Plaintiffs. By way of example and not limitation, Plaintiff
19  Alfredo Acosta Figueroa submitted comments on behalf of Plaintiff LA CUNA on the draft
20  environmental impact statement and Plaintiffs LA CUNA and CARE submitted comments and
21  a protest on the final environmental impact statement and land-use amendment prior to the
22  issuance of the record of decision.

23       12.    Plaintiffs have no plain, speedy, adequate remedy in the ordinary course of law
24  since Plaintiffs, their respective members, and other members of the public will suffer
25  irreparable harm as a result of Defendants' violations of federal law as alleged in this pleading.
26  Defendants' violations rest on the failure to satisfy a clear, present, ministerial duty to act in
27  accordance with federal law.

28

1       13.    Plaintiffs have a beneficial right and interest in Defendants' fulfillment of all their

2   legal duties, as alleged in this pleading.

3   **FIRST CLAIM:**
**Violation of Consultation Rights**

4   **(Against All Defendants)**

5       14.    Paragraphs 1 through 13 are fully incorporated into this paragraph.

6       15.    NHPA's regulations--*e.g.*, 36 C.F.R. § 800.1(a), § 800.2(a)(4) & (d)(1)--require

7   federal agencies to provide interested members of the public with a reasonable opportunity to

8   participate in decision-making processes. NHPA regulations also state that the "views of the

9   public are essential to informed Federal decisionmaking in the section 106 process. The agency

10  official shall seek and consider the views of the public in a manner that reflects the nature and

11  complexity of the undertaking and its effects on historic properties, the likely interest of the

12  public in the effects on historic properties, confidentiality concerns of private individuals and

13  businesses, and the relationship of the Federal involvement to the undertaking." 36 C.F.R. §

14  800.1(d)(1). "The agency official must . . . provide the public with information about an

15  undertaking and its effects on historic properties and seek public comment and input." *Id.* at

16  § 800.1(d)(2). The agency must "plan for involving the public in the section 106 process." *Id.*

17  at § 800.3(e). The agency has an obligation to seek information from "consulting parties, and

18  other individuals and organizations likely to have knowledge of, or concern with, historic

19  properties in the area, and identify issues relating to the undertaking's potential effects on

20  historic properties." *Id.* at § 800.4(a)(3).

21      16.    Plaintiffs, both separately and collectively, attach religious and cultural

22  significance to the federal (public) land that will be affected by the Rice Project. This land has

23  traditional religious and cultural importance to Indian tribes and to Plaintiffs. Consequently,

24  Plaintiffs will be seriously harmed by Defendants' failure to comply with NHPA and other laws.

25      17.    *Amendment No. 1* (Exhibit "A") is evidence that Defendants knew that LA CUNA

26  was an interested and/or knowledgeable entity that should have been consulted under NHPA.

27  Even in the absence of *Amendment No. 1*, Defendants were required to perform the prescribed

28  consultations for the benefit of Plaintiffs (among others). By way of example and not limitation,

COMPLAINT ETC.                                                                    **Page 6**

Plaintiff Alfredo Acosta Figueroa also identified himself as a Chemehuevi Tribal Sacred Site Monitor, described some of LA CUNA's efforts, and expressed concern with the Project's impacts on historical and Native American sites, which is further evidence that Defendants knew that Plaintiffs LA CUNA and Alfredo Acosta Figueroa were interested and/or knowledgeable entities and individuals who should have been consulted under NHPA.

18.    Defendants failed to perform the prescribed consultations for the Rice Project. Their failure in this regard was contrary to NHPA and other laws, and it was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law as required by the APA.

19.    Plaintiffs, the members of LA CUNA and CARE, and other members of the public have been harmed as a result of Defendants' violations of NHPA, APA and other laws because they have been denied the benefits and protections provided by compliance with those laws. By way of example and without limitation, Plaintiff, their members, the public, and the decision-makers who approved and are carrying out the Rice Project were not fully informed about the traditional religious and cultural importance attached by Plaintiffs and Indian tribes to the federal (public) land that will be affected by the Project.

### SECOND CLAIM:
### Violation of National Environmental Policy Act
### (Against All Defendants)

20.    Paragraphs 1 through 19 are fully incorporated into this paragraph.

21.    NEPA requires every federal agency to prepare an environmental impact statement ("EIS") for every major action significantly affecting the quality of the human environment that the agency proposes to approve or carry out. In general, the EIS must adequately address (*i*) the proposed action's environmental impact, (*ii*) any adverse environmental effects that cannot be avoided if the proposed action is implemented, (*iii*) alternatives to the proposed action, (*iv*) the relationship between local short-term uses of the environment and the maintenance and enhancement of long-term productivity, (*v*) any irreversible and irretrievable commitments of resources that would be involved in the proposed

COMPLAINT ETC.                                                                                    Page 7

1    action if implemented, (*vi*) mitigation measures for the proposed action, and (*vii*) cumulative
2    impacts for the proposed action.

3    22.    Defendants have not prepared an adequate EIS for the Project even though it is
4    a major action proposed to be approved and carried out by at least one federal agency and has
5    the potential to affect the quality of the human environment, including but not limited to the
6    environment in the California Desert Conservation Area.

7    23.    Defendants' failure to prepare an adequate EIS for the Project was contrary to
8    NEPA and arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law
9    as required by the APA.

10    24.    The record of decision identifies the decisions based on the EIS that constitute
11    final agency actions.

12    25.    Plaintiffs, their respective members, and other members of the public have been
13    harmed as a result of Defendants' violations of NEPA and the APA because they have been
14    denied the benefits and protections provided by compliance with those laws.  By way of
15    example and without limitation, Plaintiffs, their members, the public, and the decision-makers
16    who approved and are carrying out the Project were not fully informed about the impacts of,
17    mitigation measures for, and alternatives to the Project prior to the decision to approve and carry
18    out the Project.

19                                  **THIRD CLAIM:**
                          **Violation of National Environmental Policy Act**
20                                  **(Against All Defendants)**

21    26.    Paragraphs 1 through 25 are fully incorporated into this paragraph.

22    27.    NEPA (under *Kleppe v. Sierra Club*, 427 U.S. 390 (1976)) requires the
23    environmental consequences of several proposals that will have cumulative or synergistic
24    environmental impacts upon a region to be considered together in a programmatic EIS. Section
25    1502.4(b) of Title 40 of the Code of Federal Regulations provides that federal agencies "shall
26    prepare statements on broad actions so that they are relevant to policy and are timed to coincide
27    with meaningful points in agency planning and decisionmaking."

28

COMPLAINT ETC.                                                                    Page 8

28.     The Rice Project involves major federal actions, and together with other major solar-electricity generation and transmission projects it constitutes broad action by Defendants. Similar projects considered in the same time frame also included amendments to the CDCA Plan; the projects have a variety of cumulative impacts, including without limitation adverse impacts on Native American cultural resources, land use, and plants and animals.

28.     Defendants did not prepare a programmatic EIS for the Project (and other solar-electricity generation and transmission projects).

29.     With regard to the Project, Defendants' failure to prepare a programmatic EIS for it (and other solar-electricity generation and transmission projects) was contrary to NEPA and arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law as required by the APA.

30.     Plaintiffs, their respective members, and other members of the public have been harmed as a result of Defendants' violations of NEPA and the APA because they have been denied the benefits and protections provided by compliance with those laws.  By way of example and without limitation, Plaintiffs, their members, the public, and the decision-makers who approved and are carrying out the Project were not fully informed about the programmatic impacts of, mitigation measures for, and alternatives to the Project prior to the decision to approve and carry out the Project.

**FOURTH CLAIM:**
**Violation of Federal Land Policy and Management Act**
**(Against All Defendants)**

31.     Paragraphs 1 through 30 are fully incorporated into this paragraph.

32.     FLPMA Section 302(b) provides as follows: "In managing the public lands, the Secretary shall, subject to this Act and other applicable law and under such terms and conditions as are consistent with such law, regulate, through easements, permits, leases, licenses, published rules, or other instruments as the Secretary deems appropriate, the use, occupancy, and development of the public lands, including, but not limited to, long-term leases to permit individuals to utilize public lands for habitation, cultivation, and the development of small trade or manufacturing concerns: *Provided*, That unless otherwise provided for by law, the Secretary

COMPLAINT ETC.                                                                                      Page 9

may permit Federal departments and agencies to use, occupy, and develop public lands only through rights-of-way under section 507 of this Act, withdrawals under section 204 of this Act, and, where the proposed use and development are similar or closely related to the programs of the Secretary for the public lands involved, cooperative agreements under subsection (b) of section 307 of this Act: *Provided further*, That nothing in this Act shall be construed as authorizing the Secretary concerned to require Federal permits to hunt and fish on public lands or on lands in the National Forest System and adjacent waters or as enlarging or diminishing the responsibility and authority of the States for management of fish and resident wildlife. However, the Secretary concerned may designate areas of public land and of lands in the National Forest System where, and establish periods when, no hunting or fishing will be permitted for reasons of public safety, administration, or compliance with provisions of applicable law. Except in emergencies, any regulations of the Secretary concerned relating to hunting and fishing pursuant to this section shall be put into effect only after consultation with the appropriate State fish and game department. Nothing in this Act shall modify or change any provision of Federal law relating to migratory birds or to endangered or threatened species. Except as provided in section 314, section 603, and subsection (f) of section 601 of this Act and in the last sentence of this paragraph, no provision of this section or any other section of this Act shall in any way amend the Mining Law of 1872 or impair the rights of any locators or claims under that Act, including, but not limited to, rights of ingress and egress. In managing the public lands the Secretary shall, by regulation or otherwise, take any action necessary to prevent unnecessary or undue degradation of the lands."

33.    FLPMA Section 601(d) provides as follows: "The Secretary [of the Interior], in accordance with section 202 of this Act, shall prepare and implement a comprehensive, long-range plan for the management, use, development, and protection of the public lands within the California Desert Conservation Area. Such plan shall take into account the principles of multiple use and sustained yield in providing for resource use and development, including, but not limited to, maintenance of environmental quality, rights-of-way, and mineral development.

COMPLAINT ETC.

1   Such plan shall be completed and implementation there-of initiated on or before September 30,

2   1980."

3       34.     FLPMA Section 601(f) provides as follows: "Subject to valid existing rights,

4   nothing in this Act shall affect the applicability of the United States mining laws on the public

5   lands within the California Desert Conservation Area, except that all mining claims located on

6   public lands within the California Desert Conservation Area shall be subject to such reasonable

7   regulations as the Secretary may prescribe to effectuate the purposes of this section. Any patent

8   issued on any such mining claim shall recite this limitation and continue to be subject to such

9   regulations. Such regulations shall provide for such measures as may be reason-able to protect

10  the scenic, scientific, and environmental values of the public lands of the California Desert

11  Conservation Area against undue impairment, and to assure against pollution of the streams and

12  waters within the California Desert Conservation Area."

13      35.     Defendants have not complied with FLPMA as it relates to the Rice Project even

14  though it is located on federal (public) land and is within the California Desert Conservation

15  Area and subject to the CDCA Plan.

16      36.     Defendants' failure to comply with the CDCA Plan and take all action necessary

17  to prevent unnecessary or undue degradation of the federal (public) land affected when they

18  approved the Rice Project was contrary to FLPMA and arbitrary, capricious, an abuse of

19  discretion, or otherwise not in accordance with law as required by the APA.

20      37.     Plaintiffs, their respective members, and other members of the public have been

21  harmed as a result of Defendants' violations of FLPMA and the APA because they have been

22  denied the benefits and protections provided by compliance with those laws.  By way of

23  example and without limitation, Plaintiffs, their members, and the public will have to endure

24  unnecessary or undue degradation of the federal (public) land affected by the Rice Project and

25  will lose the protections provided for this land by the CDCA Plan.

26                          **FIFTH CLAIM:**
                **Violation of Religious Freedom Restoration Act**
27                      **(Against All Defendants)**

28      38.     Paragraphs 1 through 37 are fully incorporated into this paragraph.

COMPLAINT ETC.                                                        Page 11

1     39.    RFRA, 42 U.S.C. § 2000bb-1, prohibits the federal government from substantially

2   burdening a person's exercise of religion, even if the burden results from a rule of general

3   applicability, unless the government demonstrates that application of the burden to the person

4   is in the furtherance of a compelling governmental interest and is the least restrictive means of

5   furthering the interest.

6     40.    Plaintiffs (or, in the case of LA CUNA and CARE, the individual members they

7   represent) practice their religion--as they have done all their lives and just as their ancestors did

8   for centuries--in physical environs and with physical objects that are located on the site of the

9   Rice Project. For example, the Project has significant portions of the Salt Song Trails running

10  through it. Plaintiffs make religious pilgrimages to various sacred locations by traveling along

11  the Salt Song Trails. As part of these religious rituals, Plaintiffs sing the Salt Songs, chant, tell

12  stories about their ancestors, and recount the Creation Story. The pilgrimage and the Salt Song

13  Trails, as well as the many sacred stops and objects along the way, are essential to Plaintiffs'

14  religious practice and cannot be replicated elsewhere. The Rice Project is also near the Arica

15  Mountains, which form the center fo the base of the Tomoanchan Pyramid. Even the EIS

16  recognizes that there is at least one prehistoric geoglyph and over two dozen prehistoric trail

17  segments at the Project site. Plaintiffs' religious practices cannot be meaningfully replicated

18  elsewhere.

19     41.    The Project area has sacred sites and artifacts that have cultural and religious

20  significance to those of Chemehuevi and Mojave descent, including Plaintiffs or, in the case of

21  La Cuna and CARE, Plaintiffs' members. The area is within Chemehuevi and Mojave ancestral

22  lands and is the final resting place for tribal human remains.

23     42.    Defendants' approval of the Rice Project will substantially burden Plaintiffs'

24  exercise of religion because, among other things, physical environs and objects that are essential

25  to such exercise and that cannot be found anywhere else in the world (including but not limited

26  to those specified in the preceding paragraph) will be permanently destroyed or otherwise made

27  totally inaccessible as a result of the construction to be undertaken, equipment to be used, and

28  activities to be conducted in connection with the Project. The burden is not merely on

COMPLAINT ETC.                                 **Page 12**

1  Plaintiffs' subjective, emotional religious experience, and the Project does not merely offend
2  Plaintiffs' religious sensibilities. Defendants' approval of the Project and the burden it imposes
3  on Plaintiffs will objectively prevent Plaintiffs from practicing their religion in a meaningful
4  way because meaningful practice cannot occur if the essential physical environs and objects that
5  will be destroyed or made inaccessible as a result of the Project are not in fact available to
6  Plaintiffs.

7       43.    In light of Defendants' approval of the Rice Project, Plaintiffs (or, in the case of
8  LA CUNA and CARE, the individual members they represent) now face the decision either of
9  no longer practicing their religion as it has been practiced for centuries or of practicing their
10 religion but suffering civil or criminal penalties for trespass.  By way of example and not
11 limitation, the Project makes no provision for ensuring meaningful access to the site of the
12 Project during or after construction so that Plaintiffs can continue to practice their religion in
13 a meaningful way. The implementation of the Project also denies Plaintiffs of the governmental
14 benefit conferred by the CDCA plan and other laws.

15      44.    The burden imposed on Plaintiffs as a result of Defendants' approval of the Rice
16 Project does not further a compelling governmental interest and, even assuming that such an
17 interest is furthered, does not further the interest in the least restrictive means.

18                          **SIXTH CLAIM:**
             **Violation of Public-Participation Rights**
19                  **(Against All Defendants)**

20      45.    Paragraphs 1 through 44 are fully incorporated into this paragraph.

21      46.    NEPA requires every federal agency to provide the public with an opportunity to
22 review and comment on environmental documents for every major action significantly affecting
23 the quality of the human environment that the agency proposes to approve or carry out, so that
24 the public has a meaningful opportunity to participate in the decision.  In particular, every
25 agency must (*i*) provide the public with notice of and solicit comments on an environmental
26 impact statement; (*ii*) adopt procedures to ensure that environmental information is made
27 available to the public before decisions are made and before actions are taken; (*iii*) implement
28 procedures to make the NEPA process more useful to decision-makers and the public; (*iv*)

COMPLAINT ETC.                                                                 Page 13

1   encourage and facilitate public involvement in decisions that affect the quality of the human

2   environment; and (*v*) make diligent efforts to involve the public in preparing and implementing

3   NEPA procedures. NEPA also requires consultation with tribes, organizations, and interested

4   individuals.

5       47.    Plaintiffs and other members of the public were not properly notified about and

6   their participation was not adequately solicited for the Rice Project. Plaintiffs are tribal

7   members and interested individuals and organizations. Defendants were not diligent in

8   involving Plaintiffs and other members of the public in preparing and implementing the NEPA

9   document.

10      48.    Defendants' failure to provide the public with an adequate opportunity to

11  participate in the Rice Project's review-and-approval process was contrary to NEPA, arbitrary

12  and capricious under the APA, a prejudicial abuse of discretion, and not supported by sufficient

13  evidence.

14      49.    Plaintiff, its members, and other members of the public have been harmed as a

15  result of Defendants' violations of NEPA and the APA because they have been denied the

16  benefits and protections provided by compliance with those laws. By way of example and

17  without limitation, the public was unable to provide the decision-makers who approved and are

18  carrying out the Rice Project with information about the Project's potentially significant

19  environmental impacts not identified in the environmental assessment or requiring a level of

20  analysis that can only be provided in an environmental impact statement, about mitigation

21  measures for the Project, about alternatives to the Project, and about ways to correct or

22  otherwise improve the limited analysis of the Project's impacts--all with the goal of fostering

23  better decision-making with respect to the Project.

24                                  **Prayer for Relief**

25      FOR ALL THESE REASONS, Plaintiffs respectfully pray for the following relief,

26  conjunctively or disjunctively as the Court determines to be appropriate, against Defendants

27  (and any and all other parties who may oppose Plaintiffs in this proceeding):

28

COMPLAINT ETC.                                                          Page 14

A.   On the First Claim:

       1.   A judgment or other final order determining or declaring that Defendants failed to comply fully with the NHPA and the APA as they relate to the Project (including all associated entitlements and leases) and that the Project's approval was illegal in at least one respect, rendering the approval null and void;

       2.   A judgment or other final order determining or declaring that Defendants must fully comply with the NHPA and the APA before final approval of the Project may be granted; and

       3.   Injunctive relief prohibiting Defendants (and any and all persons acting at the request of, in concert with, for the benefit of, in privity with, or under one or more of them) from taking any action on any aspect of, in furtherance of, or otherwise based on the Project unless and until Defendants fully comply with all applicable provisions of the NHPA and the APA, as determined by the Court.

B.   On the Second, Third and Sixth Claim:

       1.   A judgment or other final order determining or declaring that Defendants failed to comply fully with NEPA and the APA as they relate to the Project (including all associated entitlements and leases) and that the Project's approval was illegal in at least one respect, rendering the approval null and void;

       2.   A judgment or other final order determining or declaring that Defendants must prepare an EIS for the Project fully in accordance with NEPA and the APA before final approval of the Project may be granted; and

       3.   Injunctive relief prohibiting Defendants (and any and all persons acting at the request of, in concert with, for the benefit of, in privity with, or under one or more of them) from taking any action on any aspect of, in furtherance of, or otherwise based on the Project unless and until Defendants fully comply with all applicable provisions of NEPA and the APA, as determined by the Court.

C.    On the Fourth Claim:

      1.    A judgment or other final order determining or declaring that Defendants failed to comply fully with FLPMA and the APA as they relate to the Project (including all associated entitlements and leases) and that the Project's approval was illegal in at least one respect, rendering the approval null and void;

      2.    A judgment or other final order determining or declaring that Defendants must fully comply with FLPMA and the APA before final approval of the Project may be granted; and

      3.    Injunctive relief prohibiting Defendants (and any and all persons acting at the request of, in concert with, for the benefit of, in privity with, or under one or more of them) from taking any action on any aspect of, in furtherance of, or otherwise based on the Project unless and until Defendants fully comply with all applicable provisions of FLPMA and the APA, as determined by the Court.

E.    On the Fifth Claim:

      1.    A judgment or other final order determining or declaring that Defendants failed to comply fully with RFRA and the APA as they relate to the Project (including all associated entitlements and leases) and that the Project's approval was illegal in at least one respect, rendering the approval null and void;

      2.    A judgment or other final order determining or declaring that Defendants must fully comply with RFRA and the APA before final approval of the Project may be granted; and

      3.    Injunctive relief prohibiting Defendants (and any and all persons acting at the request of, in concert with, for the benefit of, in privity with, or under one or more of them) from taking any action on any aspect of, in furtherance of, or otherwise based on the Project unless and until Defendants fully comply with all applicable provisions of RFRA and the APA, as determined by the Court.

      4.    Attorney's fees and expert fees under Section 1988 of Title 42 of the United States Code.

COMPLAINT ETC.            Page 16

F.      All legal fees and other expenses incurred in connection with this proceeding, including but not limited to reasonable attorney fees as authorized by law.

G.      Any and all further relief that this Court may deem appropriate.

Date: December 27, 2011.                    Respectfully submitted,

BRIGGS LAW CORPORATION

By:     _____
        Cory J. Briggs

        Attorneys for Plaintiffs La Cuna de Aztlan Sacred Sites Protection Circle Advisory Committee, CAlifornians for Renewable Energy, Alfredo Acosta Figueroa, Phillip Smith, Patricia Figueroa, Ronald Van Fleet, Catherine Ohrin-Greipp, Rudy Martinez Macias, and Gilbert Leivas

COMPLAINT ETC.                                                          Page 17

**COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS
RELIEF UNDER THE ADMINISTRATIVE PROCEDURES ACT, THE
NATIONAL HISTORIC PRESERVATION ACT, THE NATIONAL
ENVIRONMENTAL POLICY ACT, THE FEDERAL LAND POLICY AND
MANAGEMENT ACT, AND THE RELIGIOUS FREEDOM RESTORATION
ACT**

Exhibit "A"

## Amendment No. 1 to Memorandum of Understanding
### Between
### United States Department of the Interior
### Bureau of Land Management
### and the
## Southern Low Desert Resource Conservation and Development Council

This Amendment No. 1 modifies the current Memorandum of Understanding (MOU) that was signed by the Bureau of Land Management (BLM) and the Southern Low Desert Resource Conservation and Development Council (Council) in July 2006 to include the La Cuna de Aztlan Sacred Sites Protection Circle Advisory Committee (LCASSPC) and the Blythe Area Chamber of Commerce and Tourist Information Center (Chamber) in the partnership for protection of cultural resources in the BLM Yuma Field Office planning area.

### Section "II. Definitions" is amended as follows:

A. BLM: The Bureau of Land Management's Yuma Field Office, which has management responsibility for the public land area covered under this MOU.

B. Council: The Southern Low Desert Resource Conservation and Development Council (a 501(c)(3) non-profit / non-governmental conservation and community development organization).

C. LCASSPC: La Cuna de Aztlan Sacred Sites Protection Circle Advisory Committee. A 501(c)(3) nonprofit organization that is comprised of 15 indigenous and culturally aware individuals who are dedicated to physically protecting the Blythe Giant Intaglios, other geoglyphs, and several hundred sacred sites that are located along the Colorado River from Needles, California, to Yuma, Arizona.

D. Chamber: The Blythe Area Chamber of Commerce and Tourist Information Center. Provides information to visitors and the community about the Blythe Intaglios and other important cultural resources in the vicinity of Blythe, California.

E. MOU signatories: Refers to all agencies and organizations that have a formalized partnership through the July 2006 MOU and associated amendments.

### Section "III. Statement of MOU Purpose" is amended as follows:

This Memorandum of Understanding (MOU) will provide a means for the ~~BLM the Council~~ MOU signatories to work in partnership to enhance cultural resources protection, conservation, and interpretation efforts on BLM lands within the Yuma Field Office's jurisdiction and the Southern Low Desert RC&D area. The purpose of this MOU is to assist the BLM with its responsibilities under Section 110 of the National Historic Preservation Act of 1966, as amended.

The ~~BLM, and the Council~~ MOU signatories agree that all projects conducted under this MOU will be carried out by qualified specialists. Contractors hired for projects must meet

BLM standards. Projects that may be conducted under this MOU include but are not limited to cultural resources survey, archaeological site recordation, National Register of Historic Places nominations, ethnographic studies with interested Native American tribes, design and installation of site protection and interpretation measures, and the production of interpretive materials for the public. All projects will be coordinated with and approved by the BLM.

The ~~BLM and the Council~~ MOU signatories have a common objective of helping to bring about the conservation, development, and wise use of archaeological and historical resources in the southeastern California desert area. Therefore, ~~both the BLM and the Council~~ the MOU signatories deem this effort of mutual benefit to ~~both~~ all parties. We hereby agree as follows:

A.  The Council agrees to:

  1.  Work cooperatively with BLM to coordinate and facilitate the development of plans for the conservation, protection, and interpretation of desert resources. Specifically, the Council agrees to diligently work towards the immediate and future protection of cultural resources, including the Blythe Intaglios, for the public good.

  2.  Assist with any environmental documents deemed necessary for the completion of joint projects within the mutual boundary of the Council and BLM.

  3.  Provide a public outreach program to encourage and promote active public participation in the protection of desert resources.

  4.  Assist in the solicitation of funds from outside organizations and agencies to complete agreed upon projects or work items within the mutual boundaries of the BLM and the Council.

B.  LCASSPC agrees to:

  1.  Work cooperatively with BLM to coordinate and facilitate the development of plans for the conservation, protection, and interpretation of desert resources and sacred sites. Specifically LCASSPC agrees to diligently work toward the immediate and future protection of cultural resources, including the Blythe Intaglios, for the good of the future generations and the public good.

  2.  Assist with any environmental documents deemed necessary for the completion of joint projects.

  3.  Provide a public outreach program to encourage and promote active public participation in the protection of desert resources.

  4.  Assist in the solicitation of funds from outside organizations and agencies to complete agree upon projects or work items.

C.  The Chamber agrees to:

1.  Work cooperatively with BLM to coordinate and facilitate the development of plans for the conservation, protection, and interpretation of desert resources. Specifically, the Chamber agrees to diligently work toward the immediate and future protection of cultural resources, including the Blythe Intaglios, for the public good.

2.  Provide a public outreach program to encourage and promote active public participation in the protection of desert resources.

3.  Assist in the solicitation of funds from outside organizations and agencies to complete agreed upon projects or work items.

D.  BLM agrees to:

1.  Work cooperatively ~~with the Council~~ on projects of mutual benefit to ~~BLM and the Council~~ the MOU signatories.

2.  Provide technical and planning assistance for projects of mutual benefit to the ~~BLM and the Council~~ MOU signatories.

3.  Initiate any environmental assessment documents deemed necessary for the completion of any agreed upon joint projects ~~within the mutual boundaries of the BLM and the Council.~~

4.  Assist with the preparation of statements of work and hiring of contractors to complete the agreed upon projects.

5.  Cooperate and assist (when appropriate) with seeking funds to complete agreed upon joint projects.

Section "IV.  Terms of the MOU" is amended as follows:

A.  The following individuals are designated as the liaison between the ~~BLM and the Council~~ MOU signatories.

1.  Bureau of Land Management
    Yuma Field Office
    ~~Rebecca Heick~~ James T. Shoaff, Field Manager
    2555 E Gila Ridge Road
    Yuma, AZ 85365
    PH:  (928) 317-3200
    FX:  928-317-3250

2.  Southern Low Desert Resource Conservation & Development Council
    Thomas Burgin, President
    53990 Enterprise Way, 6B

Coachella, CA 92236
PH: 760-391-9002
FX: 760-391-9813

3. La Cuna de Aztlan Sacred Sites Protection Circle Advisory Committee
Alfredo A. Figueroa
Escuela de la Raza Unida
137 N. Broadway
Blythe, CA 92225
PH: (760) 922-6442
E-mail: lacunadeaztlan@aol.com

4. Blythe Area Chamber of Commerce and Tourist Information Center
Jim Shipley, COO
201 S Broadway
Blythe, CA 92225
PH: 760-922-8166
FX: 760-922-4010
E-mail: blythecoc@yahoo.com

B. Nothing herein is intended to conflict with existing BLM, Department of the Interior orders, or Council directives. If any terms or conditions of this MOU are inconsistent with existing BLM orders or Council directives, those portions of this MOU are invalid.

By signing below, the partners show their agreement to MOU Amendment No. 1 as described in this document.

Thomas Burgin, President of the Southern Low Desert Resource Conservation and Development Council.

Signed: _____      Date MAR. 6, 2008

Alfredo Figueroa, La Cuna de Aztlan Sacred Sites Protection Circle Advisory Committee.

Signed: Alfredo Figueroa      Date Feb. 15, 2008

Jim Shipley, Blythe Area Chamber of Commerce and Tourist Information Center.

Signed: _____      Date FEB 29 2008

James T. Shoaff, Field Manager of the Bureau of Land Management Yuma Field Office.

Signed: _____      Date March 14, 2008

Page 4 of 4

**COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS
RELIEF UNDER THE ADMINISTRATIVE PROCEDURES ACT, THE
NATIONAL HISTORIC PRESERVATION ACT, THE NATIONAL
ENVIRONMENTAL POLICY ACT, THE FEDERAL LAND POLICY AND
MANAGEMENT ACT, AND THE RELIGIOUS FREEDOM RESTORATION
ACT**

Exhibit "B"

# Amending Land Use Plans with Programmatic EISs

BLM 2009 National Land Use Planning Conference
"Keeping Pace with Change"



# Session Overview

○ Programmatic EISs and Tiering (S. Stewart)

○ BLM Programmatic EISs (S. Stewart)

○ Programmatic EISs Lessons Learned (K. Winthrop)

○ Programmatic vs. Site–Specific EISs (I. Hlohowskyj)



# What is a Programmatic EIS (PEIS)?

▲ EIS – CEQ regulations do not define the term "Programmatic Analyses" separately.

▲ 40 CFR 1502.4(b) – EISs may be prepared for broad Federal actions such as the adoption of new agency programs or regulations.

▲ 40 CFR 1502.4(c) – When preparing statements on broad actions agencies may find it useful to evaluate proposals in one of the following ways:

· Geographically, actions occurring in the same general location

· Generically, actions that have relevant similarities

· By stage of technological development

# Types of Actions that PEISs Support

▲ Adopting Official Policy
  ○ National–level rulemaking
  ○ Adoption of agency–wide policy

▲ Adopting Formal Plan
  ○ Adoption of an agency plan for a group of related projects

▲ Adopting Agency Program
  ○ A new agency mission or initiative
  ○ Redesign of existing programs

▲ Approving Site–Wide or Area–Wide Actions
  ○ Similar actions in a region
  ○ Multiple actions that share a common geography or timing

# PEISs Generally...

- Used for broad geographic areas

- Assess impacts across a span of conditions (facilities, geographic regions or multi-project programs)

- Emphasize cumulative impacts

- Emphasize policy level alternatives

- Emphasize program level mitigation measures and BMPs

- Do not define facilities or specific sites

- Tend to be more generic and conceptual than project-specific EISs

# Tiering

- In cases where a broad policy, plan, program or project will later be translated into site-specific projects, subsequent analyses are referred to as "tiered" analyses.

- 40 CFR 1508.28 – "Tiering" refers to the coverage of general matters in a broader EIS with subsequent narrower EISs or EAs incorporating by reference the general discussions and concentrating solely on the issues specific to the statement subsequently prepared.



# Benefits of PEISs and Tiering

- Focus on issues ripe for decision at each level of environmental review (40 CFR 1502.20)

- Opportunity to evaluate potential cumulative impacts of the reasonably foreseeable actions under a program (40 CFR 1502.4(c))

- Reduce paperwork (40 CFR 1500.4)

- Reduce delay (40 CFR 1500.5)

- Opportunity to prepare EA/FONSI for individual actions when there are no new significant impacts (NEPA Handbook 5.2.2)

# PEIS Challenges

‣ Scope

‣ Content

‣ Specificity of Analysis

‣ Alternatives

‣ Addressing Deferred Issues

‣ Handling Proposals while Preparing a PEIS



# Examples of BLM PEISs

| Name | Action | Agency | Status |
|---|---|---|---|
| **Wind Energy** AZ, CA, CO, ID, MT, NV, NM, OR,UT, WA, WY | Amend 52 land use plans to identify lands suitable for wind energy development ROW applications (no plans amended in AZ or CA). | BLM | ROD signed December, 2005 |
| **Oil Shale and Tar Sands** CO, UT, WY | Amend 10 land use plans to allocate lands suitable for consideration of leasing proposals. | BLM | ROD signed November, 2008 |
| **Geothermal Leasing** AK, AZ, CA, CO, ID, MT, NV, NM, OR, UT, WA, WY | Amend 114 land use plans to identify lands as open or closed to geothermal leasing and to adopt stipulations, BMPs and procedures for leasing. | BLM, FS | ROD signed December, 2008 |
| **West-Wide Energy Corridors** AZ, CA, CO, ID, MT, NV, NM, OR,UT, WA, WY | Amend 130 land use plans to designate energy transport corridors on federal lands suitable for proposed pipeline and transmission line ROW applications. | BLM, FS, DOD, DOE, FWS, NPS | RODs signed January, 2009 (BLM, FS) |
| **Solar Energy Development** AZ, CA, CO, NM, NV, UT | Goal is to amend land use plans to identify lands suitable for solar energy development ROW applications. | BLM | Draft PEIS scheduled for Summer, 2009 |

# BLM PEIS Decisions

- Allocate lands as open or closed to leasing or right–of way authorizations; designate energy transport corridors

- Develop a reasonably foreseeable development scenario

- Adopt stipulations, BMPs, mitigation measures and Interagency operating procedures applicable to future projects

- Adopt standard processes and procedures for leasing or right–of way authorizations

- Amend BLM land use plans to adopt all of the above

# BLM PEIS Implementation

- PEIS's do not authorize any on-the-ground activities or waive environmental review for subsequent individual actions.

- All future development projects must be in conformance with the existing land use plan as amended.

  ○ Land use plan amendments via a PEIS adopt the resource allocations, reasonably foreseeable development scenario, stipulations, BMPs and procedures.

- Site-specific concerns and the development of additional mitigation measures will be addressed in project-level reviews tiered to the analysis in the PEIS.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Virginia A. Phillips and the assigned discovery Magistrate Judge is Sheri Pym.

The case number on all documents filed with the Court should read as follows:

## EDCV12- 5 VAP (SPx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

---

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[ ] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[X] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

---

Name & Address:
Briggs Law Corporation [file: 1190.16]
Cory J. Briggs (State Bar no. 176284)
99 East "C" Street, Suite 111
Upland, CA 91786
Telephone: 909-949-7115

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| La Cuna de Aztlan Sacred Sites Protection Circle Advisory Committee;[Plaintiffs' continue on attached additional page]<br><br>v.<br><br>Western Area Power Administration;[Defendants continue on attached additional page]<br><br>PLAINTIFF(S)<br><br>DEFENDANT(S). | CASE NUMBER<br><br>**ED CV 12 - 00005** *VAP SPx*<br><br>**SUMMONS** |
|---|---|

TO:   DEFENDANT(S): _____

         _____

A lawsuit has been filed against you.

   Within __60__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, Briggs Law Corporation/Cory J. Br̶̶̶̶ , whose address is 99 East "C" Street, Suite 111, Upland, CA 91786 _____ f you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

**TERRY NAFISI**

Clerk, U.S. District Court

Dated: ¹JAN −3 2012          By: _____

                                          Deputy Clerk

                                        *(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SUMMONS (ADDITIONAL PAGE)**

Additional Plaintiffs:  CALIFORNIANS FOR RENEWABLE ENERGY, ALFREDO ACOSTA FIGUEROA, PHILLIP SMITH, PATRICIA FIGUEROA, RONALD VAN FLEET, CATHERINE OHRIN-GREIPP, RUDY MARTINEZ MACIAS, and GILBERT LEIVAS.

Additional Defendants:  TIMOTHY J. MEEKS, in his official capacity as Administrator of the Western Area Power Administration; UNITED STATES DEPARTMENT OF THE INTERIOR; KEN SALAZAR, in the official capacity of Secretary of the United States Department of the Interior; UNITED STATES BUREAU OF LAND MANAGEMENT; ROBERT ABBEY, in the official capacity of Director of the United States Bureau of Land Management; TERI RAML, in the official capacity of District Manager of the California Desert District of the United States Bureau of Land Management; JOHN KALISH, in the official capacity of Field Manager of the Palm Springs Field Office of the United States Bureau of Land Management; SOLARRESERVE, LLC; and RICE SOLAR ENERGY, LLC,

1 │ BRIGGS LAW CORPORATION [FILE: 1190.16]
  │ Cory J. Briggs (State Bar no. 176284)
2 │ Mekaela M. Gladden (State Bar no. 253673)
  │ 99 East "C" Street, Suite 111
3 │ Upland, CA 91786
  │ Telephone: 909-949-7115
4 │ Facsimile: 909-949-7121

5 │ Attorneys for Plaintiffs La Cuna de Aztlan Sacred Sites
  │     Protection Circle Advisory Committee, CAlifornians for
6 │     Renewable Energy, Alfredo Acosta Figueroa, Phillip Smith,
  │     Patricia Figueroa, Ronald Van Fleet, Catherine Ohrin-Greipp.
7 │     Rudy Martinez Macias, and Gilbert Leivas

8 │              UNITED STATES DISTRICT COURT

9 │              CENTRAL DISTRICT OF CALIFORNIA

10 │
11 │ LA CUNA DE AZTLAN SACRED SITES )
   │ PROTECTION  CIRCLE  ADVISORY )        **COMPLAINT FOR DECLARATORY,**
12 │ COMMITTEE;  CALIFORNIANS  FOR )        **INJUNCTIVE,  AND  MANDAMUS**
   │ RENEWABLE   ENERGY;   ALFREDO )        **RELIEF   UNDER   THE**
13 │ ACOSTA FIGUEROA; PHILLIP SMITH; )       **ADMINISTRATIVE  PROCEDURES**
   │ PATRICIA FIGUEROA; RONALD VAN )        **ACT, THE NATIONAL HISTORIC**
14 │ FLEET;  CATHERINE  OHRIN-GREIPP, )      **PRESERVATION   ACT,   THE**
   │ RUDY MARTINEZ MACIAS, and GILBERT )    **NATIONAL   ENVIRONMENTAL**
15 │ LEIVAS,                          )      **POLICY ACT, THE FEDERAL LAND**
   │                                  )      **POLICY AND MANAGEMENT ACT,**
16 │          Plaintiffs,            )       **AND THE RELIGIOUS FREEDOM**
   │                                  )      **RESTORATION ACT**
17 │     vs.                         )
   │                                  )
18 │ W E S T E R N    A R E A    P O W E R )
   │ ADMINISTRATION; TIMOTHY J. MEEKS, )
19 │ in his official capacity as Administrator of the )
   │ Western Area Power Administration; UNITED )
20 │ STATES  DEPARTMENT  OF  THE )
   │ INTERIOR; KEN SALAZAR, in the official )
21 │ capacity of Secretary of the United States )
   │ Department of the Interior; UNITED STATES )
22 │ BUREAU  OF  LAND  MANAGEMENT; )
   │ ROBERT ABBEY, in the official capacity of )
23 │ Director of the United States Bureau of Land )
   │ Management; TERI RAML, in the official )
24 │ capacity of District Manager of the California )
   │ Desert District of the United States Bureau of )
25 │ Land Management; JOHN KALISH, in the )
   │ official capacity of Field Manager of the Palm )
26 │ Springs Field Office of the United States Bureau )
   │ of Land Management; SOLARRESERVE, LLC; )
27 │ and RICE SOLAR ENERGY, LLC,      )
   │                                  )
28 │          Defendants.            )

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
La Cuna de Aztlan Sacred Sites Protection Circle Advisory Committee, CAlifornians for Renewable Energy, Alfredo Acosta Figueroa, Phillip Smith, Patricia Figueroa, Ronald Van Fleet, and Catherine Ohrin-Greipp

**DEFENDANTS**
UNITED STATES DEPARTMENT OF THE INTERIOR et al.

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Cory J. Briggs (State Bar no. 176284)/Briggs Law Corporation [file: 1190.16]
99 East "C" Street, Suite 111
Upland, CA 91786

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:  JURY DEMAND:** ☐ Yes ☒ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No    ☐ **MONEY DEMANDED IN COMPLAINT: $** N/A

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
16 U.S.C. § 470 et seq. ; 42 U.S.C. § 4321 et seq.; 43 U.S.C. § 1701 et seq.; 25 U.S.C. § 3001 et seq.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | **IMMIGRATION** | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☒ 893 Environmental Matters | **REAL PROPERTY** | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 245 Tort Product Liability | | | | |
| | ☐ 290 All Other Real Property | | | | |

ED CV 12 - 00005   VAP SPx

**FOR OFFICE USE ONLY:**   Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b).  RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No   ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                               ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                               ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                               ☐ D.  Involve the same patent, trademark or copyright, <u>and</u> one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
      ☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| San Bernardino County, Riverside County, Imperial County | |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
      ☑   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
      **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Riverside County, San Bernardino County | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X.  SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date  December 27, 2011

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |